**BANK OF CHICAGO/LAKESHORE formerly known as Bank of Chicago, an Illinois Banking Corporation, Plaintiff,**

v.

**Arthur E. MENALDI, Defendant.**

**No. 91 C 2039.**

United States District Court, N.D. Illinois, E.D.

Aug. 27, 1991.

James Wilson Marks (argued), Holleb & Coff, Chicago, Ill., Paul T. Fox, for plaintiff.

Ward L. Zielinski, Edward A. Cohen, Alvin W. Block & Assoc., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Defendant Arthur E. Menaldi has brought this motion for summary judgment in an action filed against him to collect on a promissory note. Menaldi claims that, pursuant to the terms of a settlement agreement, he has been discharged from any and all liability. Plaintiff Bank of Chicago/Lakeshore ("Bank") contends that Menaldi has defaulted on the promissory note and the terms of the settlement agreement hold him liable on the note. For the reasons set forth below, we deny the motion for summary judgment.

### I. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts

showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## II. Factual Background

Sometime prior to 1982, Menaldi obtained a loan from the Bank to finance the rehabilitation of a building located in Chicago at 900 West Ainslie. The loan amount was $876,783.71. This sum proved insufficient to complete the rehab, and on May 13, 1982, Menaldi and his business partner, Spyridon Diogenes, secured additional monies from the Bank. The Bank also agreed to extend the due date of the original loan. Menaldi (both personally and as president of Ektafax Corp.) and the Bank executed three documents in connection with the May 13, 1982 transaction: a promissory note ("Note"), a Settlement and Loan Agreement ("Loan Agreement"), and an Escrow Agreement ("Escrow Agreement").

Of specific importance with respect to the instant motion are paragraphs six and seventeen of the Loan Agreement. In pertinent part, paragraph six reads as follows:

6. *ASSIGNMENTS AND DEEDS IN LIEU OF FORECLOSURE:* Ektafax, Menaldi and Diogenes are hereby granted to and including November 1, 1982 in which to reduce the principal balance due the Bank to $225,000.00 or less, or in the alternative, to sell 8 out of the 10 condominium units in the 900 West Ainslie project. If the principal balance due on the loan is not $225,000.00 or less on November 1, 1982 or, in the alternative, 8 more condominium units are not and [sic] fully paid for on November 1, 1982, then the Bank shall receive Absolute Assignments in Lieu of Foreclosure and Deeds in Lieu of Foreclosure dated May 13, 1982 to *ALL* collateral pledged to it, in full satisfaction of the balance due it on the Note, including the following items of Collateral:

. . . .

The Bank shall deliver the Note and Release to the Debtors as provided in the Escrow Agreement. Although it is the Bank's intention to maintain all security interests in the Collateral, the Release shall constitute a full and General Release of Menaldi, Diogenes and Ektafax, and their respective heirs, successors and assigns from any and all liability under the Note, any personal guaranty thereof, mortgages, security agreements or any other documents relating to the Collateral.

Loan Agreement ¶ 6.

Paragraph seventeen reads:

17. *RELEASE OF DEBTORS:* For and in consideration of this Settlement and Loan Agreement, and upon payment or upon receipt of the Deeds in Lieu of Foreclosure and Absolute Assignments in Lieu of Foreclosure for all sums due the Bank on or before November 1, 1982, Bank of Chicago, an Illinois Banking Corporation, shall make and deliver its General Release and discharge Ektafax Corporation, Arthur E. Menaldi and Spyridon C. Diogenes from any and all claims, demands, actions, liabilities, debts, whether asserted or unasserted, and all causes of action which it may have against any of them, arising out of or in connection with loans concurrently and heretofore made to any and or all of them whether in contract or in tort, as of the date of full payment or full satisfaction. Full satisfaction shall be deemed effective on the date of Escrow disbursement.

*Id.* at ¶ 17.

## III. Analysis

Contrary to Menaldi's claim, the Loan Agreement did not automatically release him from his obligations to the Bank. The Bank agreed to release Menaldi only if he had sold 80% (eight of ten) of the condo units or had reduced his indebtedness to $225,000 by November 1, 1982. If either of those conditions were not met, the Bank—at its option—could choose to take certain assignments or deeds in lieu of foreclosure to all of the collateral pledged by Menaldi. *See id.* at ¶ 12 ("*AFTER FORFEITURE:* . . . if the Bank exercises its right" to the assignments or deeds in lieu of foreclosure, Menaldi, Ektafax, and Diogenes given right of first refusal on purchase of property). As the Bank aptly notes, Menaldi does not even claim that either of these conditions

precedent actually occurred. Response at 6.

The language in the Escrow Agreement supports the conclusions we draw from the Loan Agreement. That language suggests that, if the Bank elected to demand the Assignments and Deeds in Lieu of Foreclosure, it was to deliver the Note (marked "paid") and an executed release to the escrow agent, Chicago Title & Trust ("CT & T"). Menaldi could object within seven days to the release of the assignment by CT & T, but, if he did not object, CT & T was to distribute the various assignments and deeds to the Bank and the Bank's release and cancelled Note to Menaldi. Escrow Agreement at 4. The Bank did not, and has not, executed a release or tendered the Note to Menaldi. Response Exh. I (affidavit of Joseph Stryczek, Senior Escrow Officer at CT & T).

### IV. Conclusion

In sum, paragraph six of the Loan Agreement (as interpreted via paragraphs twelve and seventeen) and the Escrow Agreement raise, in the very least, ambiguities that cannot be resolved on summary judgment. Further, Menaldi does not allege that either of the conditions precedent to release actually happened. The motion for summary judgment is denied. It is so ordered.